# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ARMAGENE ELLIS-SMITH, ) | |
| ) | |
| Plaintiff, *pro se*, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | 1:08CV604 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Armagene Ellis-Smith, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## Procedural History

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 5, 2004, alleging a disability onset

date of October 5, 2002.[1] Tr. 92-94. The applications were denied initially and upon reconsideration. Tr. 63, 68. Plaintiff requested a hearing *de novo* before an Administrative Law Judge (ALJ). Tr. 60. Present at the hearing, held on May 9, 2007, were Plaintiff, her husband and a vocational expert (VE). Tr. 331.

By decision dated September 10, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 13. On June 27, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 5, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.

---

[1] Although the record is not a model of clarity, it appears that Plaintiff previously filed applications for DIB and SSI sometime before May 8, 2002. Tr. 90, 95. There was a hearing on that claim on May 8, 2002, Tr. 115, and according to Plaintiff, an unfavorable decision in that matter was rendered on October 4, 2002. Tr. 131. Those applications and decision are not part of the current administrative record. Plaintiff subsequently filed applications for DIB and SSI on December 26, 2002 (protective filing date), alleging a disability onset date of October 5, 2002. Tr. 56-67, 90, 95, 117. Those applications, which have been made part of the current administrative record, were denied initially on April 15, 2003. Tr. 85. It does not appear that either claim was pursued beyond its initial denial or reopened with the instant applications. See Tr. 150. On February 18, 2004, Plaintiff again filed claims for DIB and SSI. Tr. 52. These applications were denied initially on May 12, 2004, Tr. 80, and on reconsideration on July 19, 2004. Tr. 75. It does not appear that either claim was pursued beyond its reconsideration denial or reopened with the instant applications.

2. The claimant has not engaged in substantial gainful activity since October 5, 2002, her alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: fibromyalgia, migraine headaches, Type II diabetes mellitus, obesity, status post scaphoid fracture of the left wrist, mild depressive disorder, NOS[2] (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

Tr. 18.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work; lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk 6 hours in an 8 hour day.

Tr. 19.

6. The claimant is able to perform her past relevant work.

Tr. 23.

Although the ALJ found Plaintiff to be capable of performing her past relevant work, he nevertheless proceeded with his analysis. Plaintiff, born on March 3, 1970, was 32 years old at the time of her alleged onset date, regulatorily defined as "a younger individual." See id. (citing 20 C.F.R. §§ 404.1563 and 416.963). The ALJ found that Plaintiff has at least a high school education and can communicate in English. He added that transferability of job skills was not an issue in the case.

---

[2] Not otherwise specified.

3

Based on these factors, Plaintiff's residual functional capacity ("RFC"), and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from October 5, 2002, through the date of his decision. Tr. 24.

**Analysis**

In her brief before the court,[3] Plaintiff argues that the ALJ erred in finding that Plaintiff has the RFC to perform a full range of light work, and therefore is capable of performing her past relevant work as a sales clerk or secretary. Docket No. 18, Pl.'s Br. at 11 (citing Tr. 23). Specifically, Plaintiff asserts that the ALJ failed to consider all relevant medical evidence in the record, employer work evaluations, and testimony supporting her subjective complaints. She also asserts that the ALJ failed adequately consider her mental impairment, characterized by the ALJ as mild depression. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

---

[3] As Plaintiff is proceeding *pro se*, this court will liberally construe her pleadings, see Estelle v. Gamble, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes v. Rowe, 449 U.S. 5 (1980) (per curiam).

Scope of Review

The Act provides that, for "eligible"[4] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration *("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions (the "sequential evaluation process"). An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a *de novo* review of the evidence and

---

[4] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational.  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Residual Functional Capacity

Plaintiff argues that the ALJ erred in finding that Plaintiff has the RFC to perform a full range of light work, and therefore capable of performing her past relevant work as a sales clerk or secretary.  Docket No. 18 at 11 (citing Tr. 23). Specifically, Plaintiff asserts that the ALJ failed to consider all relevant medical evidence in the record, employer work evaluations, and testimony supporting her subjective complaints.  She also asserts that the ALJ failed to adequately consider her mental impairment, characterized by the ALJ as mild depression.

6

Medical Evidence

Plaintiff argues that the ALJ improperly ignored evidence in the record that she suffers from polycystic ovary syndrom ("PCOS"),[5] chronic fatigue, foot pain, and chondromalacia[6] in both knees. Docket No. 18 at 12. Accordingly, Plaintiff contends, substantial evidence does not support a finding that Plaintiff is capable of performing any work on a consistent basis. The court disagrees.

1. PCOS

The medical records indicate that Dr. Keith M. Ramsey began treating Plaintiff on July 14, 2003. He diagnosed PCOS following Plaintiff's second visit on August 7, 2003, based upon complaints of bloating, weight gain, abdominal discomfort and irregular menstrual periods. See Tr. 323-25. Plaintiff was seen only once more by Dr. Ramsey, on August 25, 2003, complaining of a small sore in her vaginal area. See Tr. 322. Three years later, Dr. Ramsey completed a medical examination report in connection with Plaintiff's applications for disability. See Tr. 315-21. There is no indication that Dr. Ramsey treated Plaintiff in the interim. His examination revealed no objective abnormalities. Id. Moreover, he noted no limitations caused by or

---

[5] PCOS is "the most common hormonal disorder among women of reproductive age." Signs and symptoms include irregular menstrual cycles, excess hair growth, acne and obesity, along with type II diabetes. MayoClinic.com, http://www.mayoclinic.com/health/polycystic-ovary-syndrome/DS00423 (last visited June 27, 2010).

[6] Chondromalacia patella is the softening and degeneration of the tissue (cartilage) underneath the kneecap (patella), causing pain. MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/000452.htm (last visited June 27, 2010).

relating to PCOS; instead he merely referred to notes by Plaintiff's rheumatologist, Dr. Bruce Lockwitz, and her family physician, Dr. Freeman Martin,[7] to support his opinion that unspecified limitations affected her ability to perform labor beginning in October 2002.[8]  See Tr. 320-21. Nothing in Dr. Ramsey's treatment notes or the examination report indicate that he attributed any limitations on Plaintiff's ability to perform work-related functions to PCOS.  Thus, there was no error by the ALJ in excluding PCOS from his discussion of Plaintiff's impairments.

    2.   Chronic Fatigue

Plaintiff also complains that the ALJ did not consider her complaints of chronic fatigue.  Docket No. 18 at 12.  In support of her argument, Plaintiff points to a letter drafted by Dr. Lockwitz on September 17, 2007, and submitted as evidence to the Appeals Council.  Id. (citing Tr. 326).  The letter was composed two weeks after the ALJ's decision was rendered, but the Appeals Council did receive the letter and made it part of the record.  Tr. 8.  The Appeals Council ultimately determined, however, that there was no basis to review the ALJ's decision.  Tr. 5.  The court agrees and finds no error.

Dr. Lockwitz stated in his letter that Plaintiff was diagnosed with fibromyalgia with multiple trigger points and chronic fatigue.  Tr. 326.  He opined that due to her

---

[7]   There are no medical records from Dr. Martin found in the record before the court.

[8]   Dr. Ramsey rendered this opinion although he did not begin treating Plaintiff or diagnose her condition until August 2003.

8

condition, Plaintiff was unable to work "for several years" and was unable to do activities of daily living without assistance. Id.

The record indicates that Plaintiff was first treated by Dr. Lockwitz on November 1, 2002, soon after the denial on October 5, 2002, of Plaintiff's earlier claims for disability. See Tr. 131. Plaintiff complained of headache, lower back pain, neck pain and knee pain. Tr. 253. Dr. Lockwitz noted Plaintiff's *history* of migraines and chondromalacia. Id. Plaintiff reported that she was stiff for about an hour in the morning, she was occasionally up at night, and that she was fatigued all the time. Tr. 252. Dr. Lockwitz noted multiple tender points "at fibromyalgia." Tr. 250. A subsequent x-ray of Plaintiff's knees was unremarkable, and Plaintiff's blood work was entirely normal. Tr. 244, 249.

Dr. Lockwitz sent a letter to Plaintiff dated November 7, 2002, noting that he diagnosed Plaintiff with fibromyalgia with *history of* chondromalacia of the knees, diabetes and headaches. Tr. 243. He recommended treatment with ibuprofen and occasional Darvocet for breakthrough pain. He encouraged Plaintiff to exercise and be active. Id. The records indicate that Plaintiff did not return to Dr. Lockwitz for two years, at which time she sought treatment following an injury to her wrist. Tr. 240. This appears to be the last and only time Plaintiff returned to Dr. Lockwitz until September 17, 2007, at which time Dr. Lockwitz drafted his letter to the Appeals Council in connection with Plaintiff's disability claim.

Where a treating physician's opinion "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" it may be entitled to great weight. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). Here, the record indicates that Dr. Lockwitz saw Plaintiff a total of three times over a two year period, including one visit which was, apparently, for the specific purpose of obtaining a letter to submit to the Appeals Council. Based on such a limited treatment relationship, Dr. Lockwitz's opinion is not entitled to any special significance.

Moreover, a treating physician's opinion need not be accorded significant weight if it is inconsistent with other evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Here, Dr. Lockwitz's opinion is inconsistent both with his own treatment records as well as other medical evidence. Dr. Lockwitz's notes of Plaintiff's two visits show no evidence of disabling symptoms or of objective findings that support his opinion. He noted that Plaintiff's x-ray and test results were normal, that there were no deformities, and recommended conservative treatment for Plaintiff's fibromyalgia. Tr. 238-53.

Further, Dr. Lockwitz's opinion is inconsistent with other medical opinions in the record. Plaintiff was examined on three separate occasions by state agency consulting physicians. Following all three examinations, the physicians reported Plaintiff's subjective complaints of pain, but noted that there were no trigger points as would be associated with fibromyalgia. Tr. 262, 272, 294.

10

### 3. Foot Pain/Chondromalacia

Plaintiff testified that at one point, she left her job as a sales clerk because her "feet began to bother [her]." Plaintiff points to no other evidence in support of her claim that the ALJ did not consider alleged limitations caused by foot pain.

There is similarly little objective evidence to support Plaintiff's claims that she suffers limitations caused by chondromalacia. Upon examination, Dr. Lockwitz noted merely a *history* of chondromalacia, bilateral knee x-rays in 2002 were entirely normal, and all laboratory studies were "in good order from an arthritis point of view." Tr. 243, 249. Upon examination by a state agency physician in 2003, Plaintiff made no specific complaints about knee pain, there was no crepitus, tenderness, swelling, effusion, laxity or nodules, and her extension and flex were normal. Tr. 262-63. At a second examination by the same state agency physician in 2004, Plaintiff complained of knee pain, but rated it only 4 out of ten when "sitting around." Tr. 270. Both knees had marked crepitus and limited range of motion, but the physician opined that Plaintiff could work 8 hours a day in a seated, standing or ambulatory position with allowance to sit for 15 minutes of an hour. Tr. 274. Upon examination by another state agency physician in 2005, Plaintiff stated she had arthritis of the knees for four years (which is inconsistent with Dr. Lockwitz's assessment as reported to her). There was tenderness in both knees (a subjective complaint) but objectively, there was no crepitus, redness, warmth, swelling, effusion, laxity or nodules, and her range of motion was normal. Tr. 293.

11

In the Fourth Circuit, "'[p]ain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof.'" Craig, 76 F.3d at 592 (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). See also Mastro, 270 F.3d at 178 (little weight may be accorded an opinion based mainly on plaintiff's subjective complaints). Accordingly, the court finds no error by the ALJ in failing to include Plaintiff's claims of foot pain and chondromalacia in assessing her RFC.

<u>Depression</u>

Plaintiff also argues that the ALJ did not properly evaluate the evidence regarding her depression. The regulations provide that "[i]f we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The decision *must* include a specific finding as to the degree of limitation in each of the following areas: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) , 416.920a(c)(3). This is precisely what the ALJ did. He expressly considered Plaintiff mental functioning levels and found that Plaintiff has only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 19. Moreover, these findings are supported by substantial evidence. Although Plaintiff takes prescribed

anti-depressants, there is no record that she has sought any other treatment from mental health professionals. Patrick Utz, Ph.D., an examining consulting psychologist, diagnosed Plaintiff with a mild to moderate depressive disorder and rated Plaintiff's GAF at 60. Tr. 300. B. R. Horton, Ph.D., a non-examining consulting psychologist, prepared a psychiatric review technique and found, as adopted by the ALJ, only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 311.

Work Evaluations

Plaintiff further alleges that the ALJ ignored employer performance evaluations, which, she contends, demonstrate that she has mental impairments which cause her difficulties in performing basic work functions. Docket No. 18 at 13. Indeed, there are employer evaluations in the record which were not included in the ALJ's analysis. Nevertheless, rather than supporting Plaintiff's claims, the court reads them to support the ALJ's findings. In each of the evaluations, Plaintiff's employer informs Plaintiff that her name was removed from the Elkhart Community Schools' list of substitute teachers after complaints from administrators. Tr. 211-13. The complaints included classroom management, inappropriate comments to students or staff and unsatisfactory work performance. Id. Nothing in these evaluations leads the court to understand that Plaintiff was dismissed due to her claimed impairments rather than, as was reported, poor performance.

13

Credibility

Finally, Plaintiff argues that the ALJ failed to cite to any evidence supporting this conclusion that Plaintiff's complaints of disabling pain were not entirely credible. Docket No. 18 at 16. Plaintiff argues that the ALJ "relied on . . . one isolated statement by a one-time examiner that [Plaintiff] had signs suggesting symptom magnification." Id. (citing Tr. 273). She also contends that the ALJ improperly relied on evidence of Plaintiff's daily activities and made his own independent medical findings in support of his conclusions. Docket No. 18 at 16-17. Defendant contends the evidence supports the ALJ's credibility assessment.

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig, 73 F.3d at 591-92; Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably

14

consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also the other available evidence, including the claimant's medical history, medical signs, laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of daily activities, specific descriptions of the pain, and medical treatment taken to alleviate it. <u>Id.</u> By so doing, the fact finder should determine how the alleged pain affects the claimant's routine of life. <u>Mickels</u>, 29 F.3d at 921 (citing <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992)); <u>see also</u> Social Security Ruling 96-7p.

This the ALJ has done. The ALJ based this finding on Plaintiff's testimony, which he summarized as follows:

> The claimant asserts that she was diagnosed with fibromyalgia in October 2002. She had diffuse pain in both the upper and lower back, extending up into the neck. She also had a history of migraine headaches. She can stand only 10 minutes, walk 10 minutes and sit for one hour. She has body aches due to fibromyalgia. She has difficulty with balance and depends on others for support. She is depressed and has difficulty with memory and concentration. She has chronic fatigue with good days and bad days. On bad days she cannot get out of bed. On good days she takes her children to school and watches TV. She also has irritable bowel syndrome.
>
> . . .

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible.

The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to care for her personal needs, care for her children, shop, clean and cook. She is also able to socialize with friends and family. Moreover, the claimant has been advised to stay active and exercise. The claimant has worked since the alleged onset date. She earned $3587.00 in 2003 and $54038.30 [sic] in 2004. Although this work did not constitute substantial gainful activity it established that her daily activities have been greater than alleged. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Her care has been routine in nature and there are significant gaps in her history of treatment. Despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which the claimant has not taken any medication for those symptoms. The record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations. The claimant asserts that she has fibromyalgia; yet examination of the record reveals that trigger points, which establish that diagnosis, have ever [sic] been identified by a physician. In addition, as mentioned previously, the record includes statements by a doctor suggesting that the claimant was engaging in possible malingering or misrepresentation. There is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. There were times when her diabetes was not under good control. The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it [sic] would not currently prevent work. Moreover, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled. The residual functional

> capacity conclusions reached by the physicians employed by the State Disaibility Determination Services also supported a finding of not disabled.

Tr. 22-23.

This court is not authorized on review to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). If, in the face of conflicting evidence, reasonable minds could differ as to whether a claimant is disabled, it is the Commissioner or the ALJ who makes the decision. See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issue before the court is not whether Plaintiff is disabled, "but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. The court finds the ALJ's weighing of evidence to be supported by substantial evidence.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for judgment on the pleadings (docket no. 17) seeking a reversal of the Commissioner's decision should be **DENIED**,

Defendant's motion for judgment on the pleadings (docket no. 19) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

                                                            */s/ Wallace W. Dixon*
                                                            WALLACE W. DIXON
                                                            United States Magistrate Judge

July 16, 2010